IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| LEMUEL HOUSTON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 3:22-CV-1250-MAB |
| | ) |
| SHERI BUETTNER, et al., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

**BEATTY, Magistrate Judge:**

This matter is before the Court on the Motion for Summary Judgment filed by Defendant Sheri Buettner (Doc. 60; *see also* Doc. 61) and the Motion for Summary Judgment filed by Defendants Bryan Childs, Joshua Schoenbeck, Anthony Jones, and Anthony Wills (in his official capacity only) (Doc. 65; *see also* Doc. 66). For the reasons set forth below, Defendants' motions for summary judgment are GRANTED (Doc. 60, 65).

### PROCEDURAL AND FACTUAL BACKGROUND

Plaintiff Lemuel Houston, an inmate in the custody of the Illinois Department of Corrections, brought this action pursuant to 42 U.S.C. § 1983 for alleged violations of his constitutional rights while incarcerated at Menard Correctional Center (*see* Docs. 1, 10). Plaintiff's Complaint alleges that sometime before August 15, 2021, he was forced to be housed with another inmate in his small cell in Menard's North 2 cellhouse (Doc. 10 at p. 1). On August 15, 2021, Plaintiff filed a grievance complaining that double-celling was having serious and detrimental effects on his mental health (*Id.* at p. 2). Notably, in that

grievance, Plaintiff stated, "I'm SMI[.[1]] The condition [of double-celling] exacerbates my mental illnesses-emotional and physical deterioration, and I'm force to live in the cell with another person[.] The temperature inside the cell from the heat causes me to be sick[.] The smell of feces and urine from my cellmate causing me psychological episodes of killing my cellmate especially when it is on lock down and there is no out of cell time." (Doc. 66-1, p. 1; *see also* Doc. 10 at p. 2).

One day after filing that grievance, on August 16, 2021, Plaintiff was called to see Mental Health Professional ("MHP") Sheri Buettner to discuss his grievance (Doc. 10 at p. 2). Plaintiff's Complaint alleges that Defendant Buettner allowed an intelligence officer, Defendant Bryan Childs, to be present during the confidential mental health visit (*Id.*). Plaintiff further alleges Defendant Buettner did not inform him that it was a mental health visit and did not warn him that he could be disciplined (*Id.*).

Plaintiff was subsequently written a disciplinary ticket by Defendant Childs for the contents of his August 15 grievance (*Id.*). Plaintiff appeared before the Adjustment Committee, which was comprised of Defendants Schoenbeck and Jones, on August 24, 2021 (*Id.*). At the hearing, Plaintiff attempted to explain that he was mentally ill and his grievance only expressed concerns that he was facing during a mental health crisis (*Id.*). However, Defendants Schoenbeck and Jones found Plaintiff guilty and sentenced him to

---

[1] "SMI" refers to individuals who are seriously mentally ill, which is "an individual in custody who as a result of a medical disorder as defined in the current edition of the Diagnostic and Statistical Manual of Mental Disorders (DSM) of the American Psychiatric Association, exhibits impaired emotional, cognitive or behavioral functioning that interferes seriously with his or her ability to function adequately except with supportive treatment or services. (*see* Doc. 61, p. 2 fn. 1) (citing IDOC Administrative Directive 0.5.15.100(II)(E)).

two months in segregation (*Id.*).

Plaintiff alleges that he was moved to a segregation cell with deplorable conditions (*Id.*). As a result, his mental health only worsened. Plaintiff submitted another grievance on September 30, 2021, which grieved that he was unfairly disciplined for communicating his mental health issues in his August 15 grievance (*Id.*). Plaintiff appealed his September 30 grievance to the Administrative Review Board (ARB) after it was denied at the facility level (*Id.*). Ultimately, ARB member Sherry Benton agreed with Plaintiff and expunged his disciplinary ticket, finding that his August 15 grievance did not demonstrate an intent to kill his cellmate, but rather contained a mental health thought (*Id.*; *see also* Doc. 66-8). However, by the time Plaintiff's ticket was expunged, he had already served his two-month segregation sentence in allegedly deplorable cell conditions (Doc. 10 at p. 2).

Following a threshold review of Plaintiff's complaint pursuant to 28 U.S.C. § 1915A, Plaintiff was permitted to proceed on the following claim[2]:

> **Count 4:** Eighth Amendment claim against Buettner, Childs, Schoenbeck, and Jones for exhibiting deliberate indifference to Plaintiff's serious mental health needs.

(*Id.* at pp. 3-4).[3] The Court's Merit Review Order further specified that in Count 4,

---

[2] The Court's Merit Review Order also allowed Plaintiff to proceed on an Eighth Amendment claim against John Doe Defendant for subjecting Plaintiff to unconstitutional conditions of confinement (Doc. 10, p. 3). However, that claim was later dismissed because Plaintiff failed to timely file a motion to identify and/or substitute the John Doe Defendant (Doc. 38). Approximately 10 months after the Court entered the Order dismissing his claim against the John Doe Defendant, Plaintiff filed a one sentence motion to substitute which provided no explanation for (or acknowledgement of) his motion's untimeliness (Doc. 51). Consequently, the Court denied Plaintiff's motion and reiterated that this matter was now only proceeding on Count 4 against Defendants Buettner, Childs, Schoenbeck, and Jones (Doc. 54).

[3] Defendant Anthony Wills, the Warden of Menard Correctional Center, was added to this action in his official capacity only for the purposes of assisting in identifying the John Doe Defendant and effectuating any injunctive relief (*see* Doc. 10, pp. 5-6).

Page **3** of **17**

"Plaintiff alleges that instead of taking steps to mitigate the serious risk of harm posed by his mental illness by referring him for treatment, or in Buettner's case by providing treatment, they subjected him to disciplinary proceedings and punishment that was far more likely to exacerbate his mental illness." (*Id.* at p. 4).

Thereafter, Defendants withdrew their affirmative defense of failure to exhaust administrative remedies (Docs. 39, 42, 46, 47) and accordingly, a Final Scheduling Order was entered (Doc. 48). On October 11, 2024, Defendant Buettner filed a Motion for Summary Judgment (Doc. 60) and supporting memorandum (Doc. 61). Several weeks later, Defendants Childs, Wills, Jones, and Schoenbeck filed their Motion for Summary Judgment (Doc. 65) and supporting memorandum (Doc. 66). Notably, Plaintiff did not file a response in opposition to Defendants' motions, despite being warned of the consequences for failing to do so (*see* Docs. 62, 67). *See Bryant v. Madigan*, 84 F.3d 246, 248 (7th Cir. 1996); *Timms v. Frank*, 953 F.2d 281, 285 (7th Cir. 1992); *Lewis v. Faulkner*, 689 F.2d 100, 102 (7th Cir. 1982); *see also* SDIL-LR 56.1.

**DISCUSSION**

I.    <u>Summary Judgment Standard</u>

"Summary judgment is appropriate 'if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to summary judgment as a matter of law.'" *Spivey v. Adaptive Mktg. LLC*, 622 F.3d 816, 822 (7th Cir. 2010) (quoting FED. R. CIV. P. 56(c)). "A genuine dispute of material fact exists if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Dunn v. Menard, Inc.*, 880 F.3d 899, 905 (7th

Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Substantive law determines which facts are considered material. *See Jaranowski v. Indiana Harbor Belt R.R. Co.*, 72 F.4th 744, 749 (7th Cir. 2023). Moreover, although a non-movant receives the benefit of conflicting evidence and reasonable inferences, he or she is still required to produce evidence sufficient to establish the essential elements of his or her claims. *Jackson v. Sheriff of Winnebago Cnty., Illinois*, 74 F.4th 496, 500 (7th Cir. 2023).

In this case, Plaintiff failed to respond to Defendants' summary judgment motions as mandated by Southern District of Illinois Local Rule 56.1. Pursuant to Local Rule 56.1(g), "[a]ll material facts set forth in a Statement of Material Facts or a Statement of Additional Material Facts shall be deemed admitted for purposes of summary judgment unless specifically disputed." Accordingly, because Plaintiff has failed to respond, "we depart from our usual deference towards the non-moving party, [Plaintiff], and accept all of [Defendants'] unopposed material facts as true." *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013). Nevertheless, the Court is cognizant that "a nonmovant's failure to respond to a summary judgment motion, or failure to comply with Local Rule 56.1, does not, of course, automatically result in judgment for the movant. [The movant] must still demonstrate that it is entitled to judgment as a matter of law." *Keeton v. Morningstar, Inc.*, 667 F.3d 877, 884 (7th Cir. 2012) (internal quotation marks and citations omitted).

II.     <u>Analysis of Defendants' Motions</u>

Both of Defendants' Motions for Summary Judgment argue that Defendants are entitled to summary judgment on Plaintiff's deliberate indifference claim against them

because: (1) they were not deliberately indifferent to Plaintiff's mental health needs (Doc. 61 at pp. 10-12; Doc. 66 at pp. 7-8); and (2) Plaintiff did not suffer any substantial harm (Doc. 61 at p. 12; Doc. 66 at p. 8). Additionally, Defendants Childs, Jones, and Schoenbeck contend that they are entitled to qualified immunity (Doc. 66 at pp. 8-9). Significantly, the Court's analysis of both motions has focused upon Defendants' first argument because it is dispositive.

Under the Eighth Amendment, prison officials "must provide humane conditions of confinement" by, among other things, "ensur[ing] that inmates receive adequate food, clothing, shelter, and *medical care*[.]" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (emphasis added). "To determine if the Eighth Amendment has been violated in the prison medical context, we perform a two-step analysis, first examining whether a plaintiff suffered from an objectively serious medical condition, and then determining whether the individual defendant was deliberately indifferent to that condition." *Petties v. Carter*, 836 F.3d 722, 727-28 (7th Cir. 2016); *see also King v. Kramer*, 680 F.3d 1013, 1018 (7th Cir. 2012) (explaining that the first element is objective while the second element is subjective); *Munson v. Newbold*, 46 F.4th 678, 681 (7th Cir. 2022) (same).

To satisfy the first, objective element, a "medical need is considered sufficiently serious if the inmate's condition has been diagnosed by a physician as mandating treatment or is so obvious that even a lay person would perceive the need for a doctor's attention." *McGee v. Adams*, 721 F.3d 474, 480 (7th Cir. 2013) (quoting *Gomez v. Randle*, 680 F.3d 859, 865 (7th Cir. 2012)). Meanwhile, to satisfy the second, subjective element, a prison official acts with deliberate indifference only when he "actually [knows] of and

disregard[s] a substantial risk of harm." *Brown v. Osmundson*, 38 F.4th 545, 550 (7th Cir. 2022) (internal quotation marks and citation omitted). Additionally, because of the differing roles of Defendants, the Court notes that:

> Deliberate indifference to medical needs claims are analyzed differently depending on whether the defendant is a medical professional or a correctional officer. *McGee v. Adams*, 721 F.3d 474, 481 (7th Cir. 2013). Because medical professionals are "entitled to deference in treatment decisions unless no minimally competent professional would have so responded under the circumstances," they may be deemed deliberately indifferent only if their treatment decisions reflect "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Id.* (alteration and citations omitted). Non-medical prison staff, meanwhile, are generally "entitled to relegate to the prison's medical staff the provision of good medical care," *Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009), and thus may be held liable under § 1983 only if they have "a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner." *Arnett v. Webster*, 658 F.3d 742, 755 (7th Cir. 2011). The relevant inquiry turns on the prison official's subjective state of mind. *Petties v. Carter*, 836 F.3d 722, 729 (7th Cir. 2016) (en banc).

*Haywood v. Wexford Health Sources, Inc.*, 752 F. Supp. 3d 934, 943-44 (N.D. Ill. 2024).

As an initial matter, the Court notes that neither summary judgment motion has argued that Plaintiff's mental health concerns do not constitute an objectively serious medical condition (*see generally* Docs. 61, 66). *See Est. of Stephenson by Coad v. Calumet Cnty.*, 22-C-956, 2024 WL 6043304, at *16 (E.D. Wis. Nov. 19, 2024) ("Mental illness alone—even disconnected from imminent suicide risk—is a serious medical need."). Therefore, the Court finds Plaintiff's mental illness constituted an objectively serious medical condition. *Id.* Consequently, the Court's analysis of both summary judgment motions focuses upon whether Defendants knew of and disregarded a substantial risk of harm to

Plaintiff's mental health. *See Brown*, 38 F.4th at 550.

    a. <u>*Defendant Buettner's Motion (Doc. 60)*</u>

Defendant Buettner argues Plaintiff cannot establish that she was deliberately indifferent to his mental health needs because: (1) she was not involved or even aware of the disciplinary proceedings related to his deliberate indifference claim; and (2) she provided treatment and appropriately relied upon the recommendations of other mental health professionals (Doc. 61 at pp. 10-12). Both of these contentions justify granting Defendant Buettner's motion.

For one, Defendant Buettner's undisputed, sworn declaration was that she had no knowledge of the disciplinary ticket or disciplinary action taken against Plaintiff (Doc. 61-2 at p. 6). The record is clear that her name was not on the disciplinary report (*see* Doc. 61-1, p. 74; Doc. 1, p. 11). Moreover, Defendant Buettner was not called to the Adjustment Committee hearing (*Id.*; *see also* Doc. 61-1 at p. 69).[4] In addition, Defendant Buettner stated that she did not call Defendant Childs, allow him to observe her visit with Plaintiff on August 16, 2021, or otherwise provide any information from her communications with Plaintiff to Defendant Childs or any other Internal Affairs officers (Doc. 61-2 at p. 6). To the contrary, she stated that the meeting was confidential (Doc. 61-2, p. 5; Doc. 61-3, p.

---

[4] During his deposition, Plaintiff said that Defendant Buettner was supposed to be present at his disciplinary hearing because he is seriously mentally ill (SMI) (Doc. 61-1, pp. 71-72). However, the undisputed evidence is that Plaintiff was not diagnosed as SMI at that time (*see, e.g.*, Doc. 61-3 at pp. 21, 29, 36, 53, 77). Moreover, even if Plaintiff had been diagnosed as SMI at that time, this does not alter the undisputed fact that Defendant Buettner was not aware of any disciplinary proceedings brought against Plaintiff or that she played no role in the discipline imposed against him. *See, e.g.*, *Sanders v. Moss*, 23-1335, 2025 WL 2476653, at *5 (7th Cir. Aug. 28, 2025) ("The [mental health] provider plays no role in deciding whether the [SMI] inmate committed the alleged misconduct.").

65). Thus, Plaintiff has provided no evidence to contest the fact that Defendant Buettner was not aware of or responsible for the disciplinary action underlying his deliberate indifference claim. For this reason alone, Defendant Buettner's Motion for Summary Judgment must be granted insofar as Plaintiff has averred that Defendant Buettner was liable due to her actions related to the disciplinary proceedings.

Significantly, Defendant Buettner has also provided uncontested evidence demonstrating that Plaintiff was provided with the relief that he believed would alleviate his mental health concerns (*see, e.g.*, Doc. 61-3 at p. 64). Namely, Defendant Buettner's progress note from their meeting documents that Plaintiff was removed from his prior cell and placed in a single cell (*Id.*). Given Plaintiff's claim that his mental health concerns were created by having a cellmate, and Defendant Buettner's evidence that she was either responsible for him being removed from that situation or, at a minimum, aware of that change, "the record is devoid of any evidence from which a reasonable jury could conclude that no minimally competent mental health professional would have made the recommendations" made by Defendant Buettner. *Sanders v. Moss*, 23-1335, 2025 WL 2476653, at *8 (7th Cir. Aug. 28, 2025). Relatedly, even if Defendant Buettner had been aware of Plaintiff's disciplinary proceedings, the record before the Court provides no basis to conclude that her recommendation and Plaintiff's overall mental health treatment departed from professional norms (*see generally* Doc. 61-3). *Id.* at *8-9 (affirming summary judgment finding that the medical defendants were not deliberately indifferent to the plaintiff's mental health needs during the disciplinary process); *Johnson v. Prentice*, 29 F.4th 895, 905 (7th Cir. 2022) ("There is no expert testimony that their treatment decisions

represented a departure from accepted professional standards—much less a *substantial* departure—and no evidence suggests that their decisions were not actually based on medical judgment.").

Furthermore, Defendant Buettner explained that she followed appropriate procedures by relaying her observations and findings to Licensed Clinical Professional Counselor Tera Wilkes and then relying on Ms. Wilkes' determination (*see* Doc. 61-3 at p. 63) (containing the name and time the crisis team leader was contacted). This too demonstrates that Defendant Buettner's treatment was reasonable under the circumstances because another mental health professional provided with the same information also found the prescribed course of treatment to be appropriate (Doc. 61-2 at p. 5) ("In this situation, after communication what I learned during my evaluation, QMHP Wilkes did not recommend that Mr. Houston be placed on crisis watch based on the cumulative risk and protective factors outlined in the Evaluation of Suicide Potential procedures.").

In summary, the undisputed evidence demonstrates that Defendant Buettner: (1) provided Plaintiff with appropriate medical treatment and (2) was unaware of the disciplinary proceedings that Plaintiff alleges deprived him from receiving appropriate treatment. For these reasons, Defendant Buettner's Motion for Summary Judgment is GRANTED (Doc. 60).

  b. <u>*Defendants Childs, Wills, Jones, and Schoenbeck's Motion (Doc. 65)*</u>

Defendants Childs, Wills, Jones, and Schoenbeck argue they are entitled to summary judgment because they are not mental health providers and did not provide

mental health treatment to Plaintiff (Doc. 66 at p. 7). As such, they contend they were not deliberately indifferent based upon their actions and reliance upon the medical professionals (*Id.*). The Court finds this argument to be persuasive.

However, before addressing Defendants' contentions, the Court believes it is important to clarify that Plaintiff's claim against Defendants Childs, Jones, and Schoenbeck is not about the allegedly improper process he received at the disciplinary proceedings. Therefore, the fact that Plaintiff's disciplinary ticket was ultimately expunged by the ARB has little to no relevance on the question of whether Defendants were deliberately indifferent to Plaintiff's serious mental health needs. Instead, the question here is whether Defendants were deliberately indifferent to Plaintiff's serious mental health needs by failing to refer him to appropriate mental health treatment and instead holding disciplinary proceedings against him and imposing discipline.

First and foremost, the record refutes Plaintiff's claim that Defendants were deliberately indifferent to his serious mental health needs by failing to refer him to treatment. To the contrary, the medical records evince that Plaintiff was provided mental health treatment on numerous occasions before his disciplinary proceedings, during the pendency of those proceedings, and after his proceedings concluded (*see* Doc. 61-3; *see also* Doc. 61-2). For example, Ms. Buettner's affidavit explains that Internal Affairs contacted her to conduct a mental health screening of Plaintiff in response to his grievance and that screening occurred on August 16, 2021 (Doc. 61-2 at pp. 4-5). In addition, after writing the grievance at issue but before his Adjustment Committee hearing, medical records demonstrate that Plaintiff underwent a psychiatric evaluation

Page **11** of **17**

by Dr. Alam (Doc. 61-3 at pp. 67-80). At that time, Dr. Alam also referred Plaintiff to the Office of Mental Health Management (*Id.* at p. 81).

Additionally, the record demonstrates that Plaintiff was not deemed SMI at the time he was ticketed, disciplined, or subjected to punishment (*see* Doc. 61-3 at pp. 21, 29, 36, 53, 77). The Adjustment Committee's final summary report confirms as much, stating "[t]he Adjustment Committee verified [Plaintiff] is not SMI per the active SMI list." (Doc. 66-3 at p. 1). Generally, non-medical Defendants are entitled to rely upon medical professionals' determinations regarding inmate medical treatment. *See McGee v. Adams*, 721 F.3d 474, 483 (7th Cir. 2013) ("The non-medical professional defendants, in turn, were entitled to rely on the medical professionals' determination that McGee could wear metal leg restraints."); *Wallace v. Jeffreys*, 17-CV-576-DWD, 2023 WL 2138337, at *15 (S.D. Ill. Feb. 21, 2023) ("As the defendants argue, administrators are allowed to defer to treating professionals."); *Howard v. Bartow*, 131 F. Supp. 3d 789, 800 (E.D. Wis. 2015) ("Generally, non-medical professional defendants are entitled to rely on medical professionals' determinations regarding inmates' medical treatment."). Here, in conducting disciplinary proceedings and imposing discipline, these non-medical Defendants were entitled to rely upon both the mental health professionals' determinations that Plaintiff was not SMI and the medical records documenting Plaintiff's ongoing mental health treatment. "If records show that medical professionals are providing ongoing treatment, and there is nothing to give officials notice of inadequate care, then administrators are not deliberately indifferent to a need for care." *Wallace v. Jeffreys*, 17-CV-576-DWD, 2023 WL 2138337, at *14 (S.D. Ill. Feb. 21, 2023).

"The only exception to this rule is that nonmedical officers may be found deliberately indifferent if they have a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner." *McGee*, 721 F.3d at 483 (internal quotation marks and citation omitted). No such reason exists here. Nevertheless, even if Defendants had believed that Plaintiff was not being provided appropriate mental health treatment, it would have been reasonable for Defendants to assume that Plaintiff's placement in segregation did not pose a serious risk to his mental health. This is because Plaintiff's August 15 grievance complained that his mental health was being adversely impacted by having a cellmate (Doc. 66-1). Consequently, by disciplining Plaintiff in a manner that ensured he did not have a cellmate, the Defendants cannot be said to have been deliberately indifferent to his reported mental health concerns.

Alternatively, Plaintiff could have attempted to show that Defendants were otherwise deliberately indifferent to his mental health needs by providing evidence that Defendants knew that disciplining Plaintiff with segregation could be harmful to his mental health for other reasons. However, Plaintiff did not provide any such evidence to demonstrate Defendants' subjective awareness of the risk of harm, and the medical records before the Court likewise fail to demonstrate a genuine dispute on this topic. *See Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016) ("Officials can avoid liability by proving they were unaware even of an obvious risk to inmate health or safety."). As such, the undisputed evidence is that Defendants confirmed that Plaintiff was not SMI and believed that their disciplinary actions were appropriate based upon both Plaintiff's

grievance request and their duty to "take all threats to the safety and security of the institution seriously." (Docs. 66-5, 66-6, 66-7).[5] If anything, Defendants' actions and safety concerns were bolstered further by evidence that Plaintiff assaulted a staff member at a different facility less than 6 weeks earlier (Doc. 66-4, p. 42). *See Stewart v. Wexford Health Sources, Inc.*, 14 F.4th 757, 764 (7th Cir. 2021) (holding that the use of a black box restraint did not violate the Eighth Amendment because, in part, "a court should give deference to prophylactic or preventative security measures just as it does in cases with rioting inmates."); *Berry v. Lutsey*, 780 F. App'x 365, 369 (7th Cir. 2019) (finding no deliberate indifference because, "[a]lthough Berry did not receive every accommodation that he wanted, when the staff did not grant Berry one of his requests, they did so based on the absence of a medical need (such as his normal or steady gait) or their assessment that any asserted need did not outweigh security concerns.").

In sum, Defendants' material facts and corresponding evidence, which were uncontested and unrebutted by Plaintiff, establish that there is no genuine issue of material fact as to whether they were deliberately indifferent to Plaintiff's serious mental health needs. Therefore, Defendants Childs, Wills, Jones, and Schoenbeck's Motion for Summary Judgment is GRANTED (Doc. 65).

---

[5] Plaintiff's pleadings also allege that the conditions in his segregation cell were deplorable. However, even if the Court assumes this to be true, Plaintiff has presented no evidence to create a triable issue as to whether Defendants were aware of those conditions at the time they initiated or imposed discipline against him. Without evidence of that connection, the Court will not attribute that alleged harm to Defendants.

## CONCLUSION

For the reasons outlined above, Defendant Buettner's Motion for Summary Judgment is GRANTED (Doc. 60); and Defendants Childs, Wills, Jones, and Schoenbeck's Motion for Summary Judgment is GRANTED (Doc. 65). Consequently, Defendants Buettner, Childs, Wills, Jones, and Schoenbeck are **DISMISSED with prejudice**. Additionally, because all other Defendants named in Plaintiff's Complaint have already been dismissed (*see* Docs. 10, 38), this case is likewise **DISMISSED with prejudice**.

The Clerk of Court is directed to enter judgment and close this case on the Court's docket.

**IT IS SO ORDERED.**

**DATED:  September 30, 2025**

s/ Mark A. Beatty
**MARK A. BEATTY**
**United States Magistrate Judge**

## NOTICE

Plaintiff is advised that this is a final decision ending his case in this Court. If Plaintiff wishes to contest this decision, he has two options: he can ask the undersigned to reconsider the Order or he can appeal to the Seventh Circuit.

If Plaintiff chooses to go straight to the Seventh Circuit, he must file a notice of appeal in the district court *within 30 days* from the entry of judgment. FED. R. APP. P. 4(a)(1)(A). The deadline can be extended for a short time only if Plaintiff files a motion showing excusable neglect or good cause for missing the deadline and asking for an extension of time. FED. R. APP. P. 4(a)(5)(A), (C). *See also Sherman v. Quinn*, 668 F.3d 421, 425 (7th Cir. 2012) (explaining the good cause and excusable neglect standards); *Abuelyaman v. Illinois State Univ.*, 667 F.3d 800, 807 (7th Cir. 2011) (explaining the excusable neglect standard). The current cost of filing an appeal with the Seventh Circuit is $605.00. The filing fee is due at the time the notice of appeal is filed. FED. R. APP. P. 3(e). If Plaintiff cannot afford to pay the entire filing fee up front, he must file a motion for leave to appeal *in forma pauperis* ("IFP motion") along with a recent statement for his prison trust fund account. *See* FED. R. APP. P. 24(a)(1)(C). The IFP motion must set forth the issues Plaintiff plans to present on appeal. *See* FED. R. APP. P. 24(a)(1)(C).

On the other hand, if Plaintiff wants to start with the undersigned, he can file a motion to alter or amend the judgment under Federal Rule of Civil Procedure 59(e), but such a motion is not required to preserve his appellate rights. Any Rule 59(e) motion *must* be filed within twenty-eight (28) days of the entry of judgment. FED. R. CIV. P. 59(e), and the deadline *cannot* be extended. *See* FED. R. CIV. P. 6(b)(2). Any motion must also comply

with Rule 7(b)(1) and state with sufficient particularity the reason(s) that the Court should reconsider the judgment. *Talano v. Nw. Med. Faculty Found., Inc.*, 273 F.3d 757, 760 (7th Cir. 2001). *See also Elustra v. Mineo*, 595 F.3d 699, 707 (7th Cir. 2010) ("This court has held that otherwise timely skeletal motions that fail to satisfy the requirements of FED. R. CIV. P. 7(b)(1) do not postpone the 30–day period for filing a notice of appeal . . . .").

So long as the Rule 59(e) motion is in proper form and filed no later than 28 days after the judgment is entered, the 30-day clock for filing a notice of appeal will be stopped. FED. R. APP. P. 4(a)(4). The clock will start anew once the motion is ruled on. FED. R. APP. P. 4(a)(1)(A), (a)(4), (a)(4)(B)(ii). To be clear, if the Rule 59(e) motion is filed outside the 28-day deadline or "completely devoid of substance," the motion will not stop the clock for filing a notice of appeal, and the clock will expire 30 days from the entry of judgment. *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 826 (7th Cir. 2014); *Talano,* 273 F.3d at 760-61 (7th Cir. 2001); *Martinez v. Trainor,* 556 F.2d 818, 819-20 (7th Cir. 1977). Again, the deadline for filing a notice of appeal can be extended only on a written motion by Plaintiff showing excusable neglect or good cause.